**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**

\*

vs.     Case No. 19-cr-00138-GLR

\*

**Dion Gregory Thompson**

\*

\*\*\*\*\*\*

**MEMORANDUM**

On June 16, 2020, Defendant filed a Motion for Review of Detention Order seeking to reargue the issue of his detention due to the unanticipated and material change in circumstances brought about by the COVID-19 pandemic pursuant to § 3142(f)(2)(B) of the Bail Reform Act, 18 U.S.C. § 3141, *et seq*. (the "BRA"). (ECF No. 36). Defendant's argument is that, given the increased risk of spread of the virus in a custodial situation like the Chesapeake Detention Facility ("CDF") where he is currently detained pending trial, and given his potential susceptibility to complications should he contract the virus, he should be released to home confinement. *Id*. at 3-5. On June 19, 2020, the Government filed its Response in Opposition. (ECF No. 37). Because Defendant put his medical condition at issue, on June 19, 2020, this Court ordered CDF to produce Defendant's medical records, which this Court then docketed under seal. (ECF Nos. 38 and 39).

The Court finds that no hearing is necessary. Defendant's motion is **DENIED**. Following is the Court's rationale.

Defendant was originally ordered detained by the Court following a detention hearing on April 26, 2019. (ECF No. 11). The COVID-19 pandemic had not yet emerged. This Court has previously recognized under similar circumstances that the COVID-19 pandemic does meet the requirements of § 3142(f)(2)(B) so as to justify the Court revisiting the detention issue. *See, e.g., United States v. Martin*, 2020 WL 1274857 (D.Md.; March 17, 2020). Though the pandemic is therefore a valid factor in the Court's detention analysis, it is not the only factor, and must be considered within the overall framework of the BRA.

The BRA focuses the Court's pretrial detention inquiry on two issues: (1) a defendant's risk of nonappearance; and (2) the danger that the defendant's release would pose to other individuals. *Id*. at § 3142(f). Congress then specified the criteria that this Court must weigh when assessing those two issues. *See* 18 U.S.C. § 3142(g). As this Court recently observed, none of those factors refers specifically to whether the conditions of detention threaten the defendant's well-being given his health status. *United States v. Gallagher*, 2020 WL 2614819 (D.Md; May 22, 2020); *United States v. Kyrie Thompson*, 2020 WL 2839095 (D.Md.; June 1, 2020).

As noted in *Thompson*, *supra*, at *2, a defendant's physical condition can nonetheless be relevant to a § 3142(g) assessment as it relates to assessing his propensity to appear and/or potentially harm others, or might alternatively support temporary release under Section 3142(i) under appropriate circumstances. *See, e.g., United States v. Creek,* 19-036-CCB (ECF No. 421; May 1, 2020) (granting temporary release from the D.C. Jail complex due to defendant's underlying health conditions). In the former, physical condition is weighed along with the other 3142(g) factors as they relate to risk of nonappearance and danger a defendant's release would pose to the community. In the latter, the burden is on a defendant to show that those health concerns are "compelling," outweigh the other 3142(g) factors, and that the defendant's release

does not, in turn, pose an increased health risk to the community. *See, e.g., United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also*, *Creek, supra,* ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

Accordingly, the Court will address the factors set forth in § 3142(g) as they relate to risk of nonappearance and the danger release would pose to the community, and, alternatively, will consider temporary release under § 3142(i), both in the setting of COVID-19.

1. Section 3142(g) Analysis

Defendant is indicted for possession with intent to distribute fentanyl and possession of a firearm in relation to a drug trafficking crime. (ECF No. 1). The charges carry a rebuttable presumption of detention pursuant to § 3142(e)(3). Defendant's arrest included the recovery of a firearm from his vehicle and the recovery of fentanyl that he was witnessed (and taped) discarding. (ECF No. 11). Thus, the nature and circumstance of the offense charged are serious.

At the detention hearing, the Government supported its proffer with text messages and videotape evidence of implicating Defendant directly in the charged activities. *Id.* According to the Government, this is further supported by the testimony of multiple witnesses. (ECF No. 37 at 5). Thus, the strength of the Government's proffer is substantial.

In terms of his criminal history, in December of 2017, Defendant was arrested (and ultimately convicted) on state drug distribution and gun charges in Baltimore County. He was initially released on pretrial supervision. While on pretrial release, Defendant was arrested in

February of 2018 for the conduct at issue, with this matter initially pending in state court.[1] Defendant was released on bond on March 7, 2018, but on March 17, 2018, was again arrested on drug and gun charges.[2] Defendant also successfully fled in his vehicle when approached by law enforcement, and, when ultimately located, fled again on foot prior to his arrest. (ECF No 37 at 6, n.5).

Based on the above, this Court found that Defendant had failed to rebut the presumption of detention and found by clear and convincing evidence at the hearing that no condition or combination of conditions could reasonably assure Defendant's appearance at trial and the safety of the community should Defendant be released. (ECF No. 11).

The basis of Defendant's motion is not the re-weighing of above factors that were already analyzed by the Court in its original detention decision. Rather, Defendant's "new and material" information relates to the COVID-19 pandemic. Defendant criticizes the overall conditions of detention at CDF that raise the risk of his contracting the COVID-19 virus. (ECF No. 36 at 4-6). Defendant cites positive cases of COVID-19 involving an inmate and some staff members at CDF. *Id*. at 4. Defendant also argues that his underlying health may put him at risk for complications should he contract the virus. *Id*. at 4-5. The Court does not agree that these arguments alter its previous § 3142(g) analysis.

Defendant, now age 20, cites the underlying health conditions of gout, high cholesterol and labored breathing as putting him at particular risk for complications should he contract the virus. *Id*. at 5. Defendant also asserts at least one episode of heart palpitations and chest tightness. *Id*. at 3-4. To begin with, Defendant's medical records from CDF do not document

---

[1] This conduct was charged federally on March 20, 2019. (ECF No. 1).
[2] This third set of charges was ultimately *nolle prossed*, although law enforcement recovered more than three kilos of fentanyl and a firearm from Defendant's residence, for which Defendant's brother was charged and convicted. (ECF No. 37 at 6). This same search recovered a large amount of cash and ammunition from Defendant's bedroom in that residence. *Id.*

any of these conditions as ongoing, with the exception of a self-report of concerns over a lipid panel (the results of which are not in the record) and a complaint of chronic chest pain unaccompanied by any cardiac symptoms such as shortness of breath. (ECF No. 39 at 4-5). The records reflect the observation that Defendant is not an accurate medical historian, with a suspicion that reports of medical symptoms are often for secondary gain. *Id*. at 4 and 7. Additionally, these complaints are also at odds with Defendant's interview with Pretrial Services where he indicated that he was in good physical health with no medical problems. More importantly, none of these conditions is noted by the Centers for Disease Control to increase the risk for COVID-19 complications. This does not give the Court any confidence that COVID-19 concerns would significantly enhance Defendant's compliance with release conditions so as to offset the risks raised by the other 3142(g) factors noted above, especially given his prior poor track record on supervision.

    2. Section 3142(i) Analysis

As outlined in *Clark*, *supra*, a court's analysis in assessing whether a defendant has proven a "compelling" reason for temporary release in the setting of COVID-19 involves determining whether the health risk to a defendant from his continued detention outweighs both the traditional § 3142(g) factors and the health risk to the community that he would pose if released. Looking at Defendant's specific health risks, as noted above, Defendant does not provide support for his assertion that he is at increased risk for complications should he contract the virus. Moreover, even if Defendant is at some enhanced risk, this does not outweigh the strong case for detention under the other § 3142(g) criteria. Defendant's release plan also includes residing with his parents, both of whom are over the age of 50 and have underlying health conditions putting them at risk for complications should they contract the virus. Finally, as mentioned above, Defendant's poor performance on prior supervision makes him less likely to

be compliant with the directives of government officials and public health experts regarding Covid-19.

Although it is certainly true that those in a custodial situation such as a detention facility are at increased risk of contracting the virus, CDF has taken a comprehensive set of precautionary measures to protect its staff and its residents, as outlined in great detail by the Government. (ECF No. 37 at 8-12). While Defendant questions the extent to which these measures have been effectively implemented, whatever actions are being taken have been adequate to protect the detainees at CDF relative to their counterparts, as only one positive case is noted among CDF inmates to date according to the Maryland Department of Public Safety and Correctional Services. See www. https://news.maryland.gov/dpscs/covid-19/ (*last visited 6/30/20*).

Accordingly, Defendant's Motion is **DENIED**.

6/30/2020
Date

J. Mark Coulson
United States Magistrate Judge